IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 13 |
| | ) | |
| LAVERNE MANGUM | ) | Case No. 04 B 41017 |
|         Debtor. | ) | |
| | ) | |
| | ) | Honorable Carol A. Doyle |
| LAVERNE MANGUM, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06 A 00879 |
| | ) | |
| MARILYN O. MARSHALL, | ) | |
| Chapter 13 Trustee, | ) | |
|         Defendant. | ) | |

## MEMORANDUM OPINION

The debtor, Laverne Mangum, filed this adversary proceeding against the standing Chapter 13 trustee, Marilyn Marshall, to get a discharge in her chapter 13 case and a refund of funds the trustee is holding. Both the debtor and the Ch. 13 trustee have agreed that there are no disputed facts and that this case presents only issues of law. Both parties have requested the court to rule on the legal issue presented without requiring the parties to file a motion for judgment on the pleadings or for summary judgment. Because of the court's familiarity with the legal issues, the costs to the debtor of filing a written motion seeking a judgment and the trustee's equal desire to have the issue resolved without further briefing or trial, the court has varied from its standard practice and will treat the parties' oral requests as motions for judgment on stipulated facts.

Based on the complaint, the Trustee's "Response to the Complaint," and the court's interpretation of the debtor's plan and the Bankruptcy Code discussed below, the court will enter

judgment in favor of the debtor, issue a discharge and require the Chapter 13 trustee to take all appropriate actions to close the case and refund the money it is now holding from the sale of the debtor's home to the debtor. The following are the court's findings of fact and conclusions of law in support of its judgment.[1]

## BACKGROUND AND FACTS

The following facts are undisputed. The debtor filed her petition seeking relief under Chapter 13 of the Bankruptcy Code on November 4, 2004. The court confirmed her chapter 13 plan on February 10, 2005. The plan provides that the debtor will make 36 monthly payments of $600 each and will pay her unsecured creditors a minimum of 10% of the allowed amount of their claims. On September 1, 2005, the court granted the debtor's motion to sell her home. All non-exempt proceeds from the sale were paid to the defendant, the Chapter 13 Trustee. The trustee has paid all unsecured creditors 10% of the allowed amount of their claims, but has refused to take the usual steps necessary for the debtor to get a discharge and to return the remaining sale proceeds to the debtor unless she agrees to pay all of her unsecured creditors 100% of the allowed amount of their claims. If the debtor does not agree to amend her plan to pay all creditors 100%, the trustee intends to hold the excess funds from the sale of her home until three years have passed since she filed her petition.

The debtor contends that she has made all required plan payments and that she is entitled to her discharge and the return of the excess sale proceeds. The trustee makes a number of arguments in support of her position, none of which is persuasive.

---

[1] This is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(A) and (O).

2

1.  **Paragraph D of the Plan**

First, the Trustee seems to contend that Paragraph D2 of the plan requires the debtor to pay 100% of all allowed claims if the plan ends before the initial 36-month term. The debtor used the court's Model Chapter 13 Plan, as required in this district. Paragraph D of the debtor's plan provides:

>   1.  Initial Plan Term. The debtor will pay the Trustee $600 monthly for 36 months, for total payments, during the initial plan term, of $21,600.
>
>   2.  Adjustments to initial term. (a) If the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments. (b) The plan will conclude, prior to the end of the initial term, at such time as all allowed claims are paid in full, with any interest required by the plan.

Another judge in this district has addressed the meaning of Paragraph D of the Model Plan in In re Forte, No. 03 B 45615, 2005 WL 2998530, at *1 (Bankr. N.D. Ill. Oct. 6, 2005). The court agrees with the Forte court's conclusion that Paragraph D2(b) merely describes one possible way in which the plan can end before its initial term expires, not the only way in which the plan can end early. Therefore, to the extent that the trustee argues that Paragraph D of the plan requires that the debtor's case stay "open" in some manner for at least 36 months, the court rejects that argument.

2.  **Section 1325(b)(1)(B)**

Second, the Trustee argues that interpreting the plan to permit the debtor to pay her 36 payments in less than 36 months would violate the disposable income requirement of § 1325(b)(1), because the debtor will have failed to commit all her disposable income for a

3

period of three years. Thus, the trustee seems to argue that the debtor must pay her actual disposable income over the course of the three years following the filing of the petition to satisfy § 1325(B)(1), or that if she pays it in advance, the case must nonetheless stay open for 36 months to satisfy § 1325(b)(1).

Section 1325(b)(1)(B) requires no such thing. It provides that, if the trustee or an unsecured creditor objects, the court may not confirm a plan unless it "provides that all the debtor's projected disposable income to be received in the three year period . . . will be applied to make payments under the plan." Thus, it requires the debtor to <u>project</u> her disposable income and commit all of those projected funds to the plan for a three year period. The debtor's plan did that and was confirmed without objection from the trustee in early 2005.

Section 1325(b)(1)(B) governs only whether a plan should be confirmed. It does not address how payments made by a debtor should be applied after confirmation or when a case should end. But even considering § 1325 as a guide in interpreting and administering a plan (presuming that the plan was intended to comply with it), it does not support the trustee's position. Nothing in § 1325(b)(1)(B) prevents a debtor from paying her plan payments from some source other than her actual disposable income, such as from the equity in her home if she chooses to sell or refinance her property during the course of her case. If her disposable income significantly increases during the course of the plan, the trustee might be able to move to amend the plan. But here, there is no allegation that the debtor's disposable income has increased and no party filed a timely motion to amend, so the court need not deal with that potential issue.[2]

---

[2] No timely motion to amend could be filed at this point in the case. Section 1329(a) provides that a plan may be modified "at any time after confirmation of the plan but before the completion of payments under such plan." 11 U.S.C. § 1329(a). Here, the debtor has already

4

Thus, this case is distinguishable from cases such as In re Morgan, 299 B.R. 118 (Bankr. D. Md. 2003), where courts have granted motions to modify the plan based on an unanticipated appreciation of the debtor's home. See, e.g., In re Bergolla, 232 B.R. 515, 517 (Bankr. S.D. Fla. 1999) (involving a lump sum payment after the sale of an exempt asset); In re Smith, 237 B.R. 621, 626 (Bankr. E.D. Tex. 1999) (involving a lump sum payment after the debtor's family donated funds).

Likewise, nothing in § 1325(b)(1)(B) requires a case to stay open after the debtor makes all the payments required by the plan. The three year requirement in § 1325(b)(1)(B) simply provides one test for determining the minimum amount that a debtor must propose to pay to creditors to have her plan confirmed if she does not pay all creditors 100% of their allowed claims. There is no language in the statute authorizing or requiring the Trustee to keep a case "open," in some sort of limbo, despite the fact that all plan payments have been made. See Smith, 237 B.R. at 626; Bergolla, 232 B.R. at 517; In re Martin, 232 B.R. at 37 ("A lump sum payment in the aggregate amount of the Debtors' disposable income during the three years of the Plan is simply an anticipatory satisfaction of the obligations under the Plan and is permissible.").

The court also notes that a debtor's pre-payment of plan payments greatly benefits all creditors. They receive their money early and completely eliminate the risk of the debtor's default over a three-year period, which is fairly high in a Chapter 13 case. Nothing in the

---

made all payments due under the plan, so the plan may not now be modified. See Forte, 2005 WL 2998530, at *2; Casper v. McCullough (In re Casper), 154 B.R. 243, 246 (N.D. Ill. 1993); In re Chancellor, 78 B.R. 529, 530 (Bankr. N.D. Ill. 1987) ("'[P]ayment is the discharge of an obligation, not meeting a schedule of payments.'").

5

Bankruptcy Code prevents a debtor from making her plan payments early and receiving her discharge before three years have passed.

### 3. Proceeds from Sale Are Property of the Estate

Third, the trustee argues that the debtor's home was property of the estate and that all non-exempt proceeds must be paid into the plan and distributed to creditors as an extra lump sum payment in addition to the 36 payments of $600 each required under the plan.[3] Nothing in the plan or the Bankruptcy Code requires this result and it is inconsistent with the entire concept of Chapter 13. In a Chapter 13 case, a debtor may keep certain assets, such as her home and her car, if she can cure any default on the loans secured by those assets and maintain current monthly payments due on the loans through the course of the plan. Chapter 13 allows a debtor to keep her equity in those assets if she pays her unsecured creditors in accordance with the requirements of § 1325. See, e.g., McDonald v. Burgie (In re Burgie), 239 B.R. 406, 410 (B.A.P. 9th Cir. 1999) (explaining the "chapter 13 deal," under which the debtor keeps prepetition assets instead of postpetition income).

The two key requirements of § 1325 that dictate the amount debtors must pay to unsecured creditors are found in § 1325(a)(4) and § 1325(b)(1)(B). Section 1325(b)(1)(B) requires a debtor to pay the amount of her projected disposable income into the plan for three years if she is not paying 100% to unsecured creditors. As discussed above, the debtor complied with this provision by proposing to pay $600 per month for 36 months. Section 1325(a)(4)

---

[3] The confirmation order provides that property of the estate does not re-vest in the debtor after confirmation. Order Confirming Chapter 13 Plan, dated Feb. 10, 2005 ("Notwithstanding any provision of the plan to the contrary, all property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, shall continue to be property of the estate following confirmation."). Therefore, the debtor's home remained property of the estate after confirmation. 11 U.S.C. § 1327(b).

requires the debtor to pay her creditors at least as much as they would get in a Chapter 7 case. In a Chapter 7 case, the trustee would sell her assets and distribute the equity to her creditors. Section 1325(a)(4) is often referred to as the "best interest of creditors test." It requires the debtor to pay her unsecured creditors the equivalent of the equity in her assets over the course of the plan. The debtor's plan complied with this requirement as well, so the plan requiring 36 payments of $600 each already reflects her obligation to pay her creditors at least the equivalent of her equity in her home as of the time the case was filed. Now the trustee wants to force the debtor to pay that equity to her creditors twice: first, by making 36 plan payments at $600 each; and second, by requiring her to pay the actual equity she received when she sold her home into the plan as an additional lump sum payment.

The only Bankruptcy Code provisions the trustee cites in support of this position are §§ 506 and 1306 of the Bankruptcy Code, 11 U.S.C. §§ 541, 1306. However, these provisions simply define property of the estate. They do not require that the proceeds of sale of all property of the estate be paid to the trustee as an additional lump sum payment due under a Chapter 13 plan. As noted above, the point of Chapter 13 is to allow the debtor to retain the equity in her assets as long as she meets the requirements of § 1325. Section 1325 does not require the debtor to comply with the "best interests of creditors test" by paying the equivalent of her equity to her creditors <u>and</u> then to pay her actual equity realized in a refinance or sale of the property into the plan. The trustee also failed to identify any provision of the plan that requires what is in effect a double-payment of the debtor's equity to creditors.

7

### 4. Payoff of Plan from Home Sale Violates Plan

Finally, the trustee argues that the sale of the debtor's home and her subsequent use of the proceeds to pay her monthly payments in advance is somehow contrary to the terms of the plan. The trustee has not identified any specific provision of the plan that the debtor violated. The trustee seems to argue that, if the plan does not specifically provide for sale of the debtor's home, any subsequent sale of the home is contrary to the plan. Nothing in the Model Chapter 13 Plan was intended to have any effect on whether a debtor could sell her property; that is simply a matter that need not and in most cases is not addressed in a Chapter 13 plan. The fact that the plan does not contain any specific provision authorizing the sale of her property in no way precludes the debtor from selling her property (with court approval) pursuant to § 363 of the Bankruptcy Code, a provision available to any debtor in any chapter.

### CONCLUSION

For all of these reasons, the court concludes that the debtor is entitled to her discharge and a prompt refund of the remaining proceeds from the sale of her home that the trustee is holding. The court will therefore enter judgment in this adversary proceeding consistent with this opinion.

Dated: May 18, 2006

_____
CAROL A. DOYLE
United States Bankruptcy Judge